UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ROBIN H. CONNER, etc., et al.,

        Plaintiffs,

vs.                                CASE NO. 3:01-cv-1318-J-25TEM

THOMAS HERRINGTON and
NATHANIEL GLOVER, SHERIFF OF
THE CONSOLIDATED CITY OF
JACKSONVILLE (a/k/a JACKSONVILLE
SHERIFF'S OFFICE),

        Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Nathaniel Glover's Motion for Summary Judgment (Dkt. 123), and Plaintiff's Opposition to the Motion. Upon consideration, after having reviewed the depositions, the affidavits, and exhibits in the record, the Court finds as follows:

## Procedural History

Robin Conner, as the personal representative of the estate of Kesinger and the attorney ad litem of Kessinger's surviving children, sues Nathaniel Glover, JSO Sheriff, in his official capacity pursuant to 42 U.S.C. § 1983.

Plaintiff originally also brought this suit against Defendant Herrington because of his alleged use of excessive force and unreasonable seizure of Charles Kesinger in violation of the Fourth Amendment of the United States Constitution, as secured by the Fourteenth Amendment. Along with the claims against the Sheriff in his official capacity and Officer Herrington, Plaintiff also brought a Title II of the Americans with Disabilities Act claim (42 U.S.C. § 12101 *et seq.*)

against Sheriff Glover in his official capacity. Pursuant to this Court's prior Summary Judgment Order, the ADA Count was dismissed. Pursuant to the Eleventh Circuit's remand Order, Defendant Herrington was dismissed from this Case. Thus, the issue is whether Plaintiff's remaining claim against Glover should also be dismissed.

**Facts**

This case arises from the fatal shooting of Charles Scott Kesinger (Kesinger or decedent) by a Jacksonville Sheriff's Office (JSO) officer – Detective Thomas W. Herrington, III -- during an encounter on Interstate 95 in Jacksonville at approximately 7:00 a.m., on Thursday, March 30, 2000. Officer Herrington first observed Kesinger while driving alone in his unmarked police car south on I-95 en route from home to work at the Police Memorial Building in downtown Jacksonville. Kesinger was standing in the middle of the southbound lanes of the highway, facing the north with his hands raised over his head, palms out. Herrington pulled over and stopped in the inside emergency lane, radioed dispatch for assistance with an apparent suicide attempt, and then backed up his car to get closer to Kesinger. As Herrington backed up, he observed Kesinger to still be in the lanes of traffic, hands raised in the air, going from lane to lane, moving himself in front of different vehicles that were traveling on the highway.

Herrington exited his vehicle and walked behind it on the driver's side. Herrington was unarmed, having left his gun in its holster on the right front passenger seat. He was dressed in plain clothes with his detective badge displayed on his belt on the right front side. Herrington yelled "hey" to Kesinger and motioned for him to get out of the road. Kesinger began walking rapidly in Herrington's direction. To Herrington, Kesinger appeared angry and "ready to fight." As Kesinger moved toward Herrington, Kesinger raised his arms, palms facing Herrington.

2

Herrington heard Kesinger scream, "You see this, you see this . . . I'm Jesus Christ, you motherfucker. I'm going to die and so are you." At that point, believing that Kesinger was threatening him and was a threat to himself and others, Herrington retreated into his vehicle, rolled up the driver's side window, locked the door, and again radioed for assistance. While outside his vehicle, Herrington never asked Kesinger to halt, raise his hands, submit to a weapons search, or do anything for his own or officer safety.

Shortly after calling for assistance, Herrington heard a "loud explosion" or "loud bang" from behind him. To Herrington, it sounded like a gunshot and he heard and felt breaking glass. Herrington immediately laid across the seat and unholstered his weapon. Kesinger then moved to the driver's side window. Herrington next heard another "pop, bang" and saw the side window break in a spider-webbed pattern. Because Herrington believed that Kesinger had fired a gunshot at him a second time, Herrington fired two shots at Kesinger through the driver's side window. Thereafter, Herrington radioed that he had shot the decedent, requested an ambulance and a supervisor, and then opened his door. Kesinger had fallen against the door, so Herrington had to push on it to get it open. After he got out of the car, Herrington trained his weapon on Kesinger until he determined he was no longer a threat. It was later determined that Kesinger was struck in the neck and chest by the bullets fired by Herrington and died at the scene from his wounds.

William Michael Maley of Jacksonville witnessed the shooting. He observed Kesinger standing on the interstate in the inside emergency lane of the highway near Herrington's auto. Maley observed Kesinger strike the trunk of Herrington's car with his fist multiple times, then begin to strike the rear window of Herrington's car with his right arm five to seven times.

According to Maley, Kesinger began to 'chip away' at the back window of the car and then the window was broken through by Kesinger's arm. Maley observed blood all over Kesinger's arm and chest. Subsequently, Kesinger moved to the driver's side door and began pounding on the roof of the car. This pounding on the trunk and roof of the car was not described by Herrington. Likewise, whereas Herrington said one blow to the back window had broken it, Maley spoke of several blows. Maley stated that after banging on the roof of the car Kesinger took "two steps back and to his right" and "appeared to be exhausted." At this time, Maley observed the driver's car door open, heard two gun shots from inside the car, and saw Kesinger fall backwards against the center median divider, sliding to the ground having been shot. Maley called 911 to report what he had seen.

On appeal, the Eleventh Circuit determined that Officer Herrington was entitled to qualified immunity and that Maley's version of the facts "differed from Herrington's but not in any material way." Further, the Eleventh Circuit held that Officer Herrington clearly acted within the scope of his discretionary authority and that Plaintiff failed to prove the shooting was objectively unreasonable. The Eleventh Circuit also determined that Herrington did not violate either the Constitution nor any clearly established law. Because the Eleventh Circuit determined that there was no Constitutional violation committed by Officer Herrington, Defendant Glover has filed another Motion for Summary Judgment, arguing that this case should be dismissed in its entirety.

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any

4

material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed.R.Civ.P. 56. The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of a material fact." *Celotex*, 477 U.S. at 323. Once the movant has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)).

The Court recognizes that it may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers National Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). A dispute about a material fact is genuine, and summary judgment is inappropriate, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). Of course, the district court must view all evidence most favorably toward the moving party, and all justifiable inferences are to be drawn in the nonmoving party's favor. If the district court finds, under the relevant standards, that reasonable jurors could find a verdict for the nonmoving party since a disputed factual issue exists, judgment should be denied. *Id.* However, there must exist a conflict in substantial evidence to pose a jury question. *See Walker v. Nationsbank of Florida N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995)(quoting *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)).

**Analysis**

Plaintiff urges the Court to deny summary judgment, contending that the Eleventh Circuit's finding that Officer Herrington did not commit a Constitutional violation does not immunize Glover of Section 1983 liability. Plaintiff maintains that she continues to have a viable Constitutional claim for failure to train even if she does not have a viable claim for an excessive force violation. Plaintiff cites *City of Canton, Ohio v. Harris* for this argument. 489 U.S. 378 (1989). In *Canton*, the Supreme Court held that inadequate training may serve as a basis for Section 1983 liability where failure to train amounts to deliberate indifference to the rights of the relevant party.

To state a claim against a municipality under Section 1983, the plaintiff must: (1) identify a municipal policy or custom, *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997)(citations omitted); and (2) allege a causal connection between the execution of the policy or custom and the injury claimed, *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff argues that Defendant knew of a need but had a longstanding policy of failing to train his officers as to how to handle mentally disabled individuals so as to prevent their deaths at the hands of officers who did not know how to respond correctly to the mentally disabled. The Court summarized Plaintiff's evidence of the alleged policy in its prior summary judgment Order. The Court remains convinced that Plaintiff proffered a history of widespread similar abuses that should have put Defendant Glover on notice of the need for training in this area.

The Supreme Court in *Canton*, however, held that "our first inquiry in any case alleging municipal liability under Section 1983 is the question whether there is a direct causal link between a municipal policy or custom *and the alleged constitutional violation."* *Id.* at 385. (emphasis added). The *Canton* Court merely rejected the argument that *only* unconstitutional

municipal policies *per se* are actionable under Section 1983. Thus, the Supreme Court held that an action may sometimes lie for failure to train where the *policy* challenged is not unconstitutional, not that a Section 1983 claim can be furthered in the absence of any Constitutional violation.

As noted, the Eleventh Circuit has determined that there was no Constitutional violation in this case and Defendant maintains that Section 1983 liability cannot lie where there is no Constitutional violation.[1] The Eleventh Circuit has previously held that

an inquiry into a governmental entity's custom or policy is relevant only when a Constitutional deprivation has occurred. *Rooney v. Watson*, 101 F.3d 1378, 1381-1382 (11th Cir. 1996), ("Since we have determined that Deputy Watson's conduct did not cause the Rooneys to suffer a constitutional deprivation, we need not inquire into Volusia County's policy and custom relating to patrol vehicle operation and training. Therefore, our finding that the Rooneys did not suffer any constitutional deprivation makes it unnecessary to consider Volusia County's policy or custom.") *Rooney v. Watson*, 101 F.3d 1378, 1381-1382 (11th Cir. 1996).[2]

---

[1] As this Court stated in its prior summary judgment Order, "A necessary predicate for Plaintiff's claim that Glover violated his Fourth Amendment rights is evidence that Officer Herrington acted unreasonably in the course of seizing the decedent.....A seizure is not unconstitutional unless it is "unreasonable." *Tennessee v. Garner*, 471, U.S. 1, 7-8 (1985).

[2] The *Rooney* Court cited several relevant cases, "*Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986) (finding that a departmental policy or regulation authorizing the use of constitutionally excessive force is not relevant when a person has not been deprived of a constitutional right as a result of actions taken by an individual police officer); *see also Roach v. City of Fredericktown, Mo.,* 882 F.2d 294, 297-98 (8th Cir.1989) (finding that a municipality may be held liable under section 1983 for inadequate training only after determining that the plaintiff has suffered a constitutional deprivation as a result of the municipal employee's conduct)."

The case law is clear; because the Eleventh Circuit has determined that Officer Herrington did not violate the Constitution in the relevant scenario, an action cannot lie against the Sheriff for failure to train. Accordingly, it is **ORDERED**:

Defendant Glover's Renewed Motion for Summary Judgment (Dkt.123) is **GRANTED** and the this case is **DISMISSED**. The clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of September, 2005.

HENRY LEE ADAMS, JR.
UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record